All right, our previous case is submitted. This argument is 19-2152 United States v. Billy Garcia. Ms. Lord. Thank you. May it please the court. My name is Kathleen Lord and I represent Billy Garcia. I plan to focus my argument on the severance and bifurcation issues. And I have joined Arturo Garcia and Edward Troop in their severance and bifurcation arguments. But I want to focus primarily on the issues that I raised in my supplement to their arguments in my opening brief. And it raises a very fundamental question about what the law is in VIKR cases. And the question is, is there any temporal limit? And when you look to the language of the statute, the answer has to be yes. You just read the statute and you see that the racketeering enterprise activity that's relevant is that which is in effect at the time of the predicate effects or the murder in this case. Mr. Garcia was charged with two counts occurring in 2001. And any racketeering activity that occurred by the SNM some period after that is irrelevant to the offense with which he is charged. And the government has taken the opposite position. The government in all of its arguments has always said that we're allowed to prove the enterprise and racketeering acts or activity throughout time. And when you look at the statute, that's not allowed. And the court took that same position. And by taking that same position, the court wasn't able to soundly exercise its discretion in ruling on the severance motion. Would any subsequent crime be off limits? I'm sorry, I didn't hear you. Would any subsequent crime be off limits under your interpretation? No. I mean, the question would be, is it relevant to the charged offense? And there may be some period of time after the charged offense, in this case 2001, you know, say up to 2002, say up to 2003, and I'm being very generous, that would show that this SNM enterprise was an enterprise, is an enterprise at the time of the charged by-car offense. I'm just trying to pin you down a little bit on the temporal aspects so I can think about how I'd, you know, write an opinion. Would 5 or 10 years, crime 5 or 10 years later be categorically off limits using your terminology? Or are there circumstances where a 15 year, 10 year later crime could still be relevant to the Vicar charge? I'm sorry. It wouldn't be categorically off limits. You would apply the rules of evidence. I mean, is there a 404B issue? Is there something that shows that the defendant did the charged act? So I'm, what I'm saying is that 10 years after the fact, or 5 years after the fact, a random uncharged or charged by-car act would not be relevant to a by-car act that occurred 5 years previously. On the theory of relevance, that is part of a continuing enterprise. Okay. Let me see if I can see where this is headed. So you're, are you basically saying that there needed to be severance because you're, it was not proper for all this later evidence to come in during your client's trial? Yes, I'm saying that. And I'm also saying that the judge didn't exercise his discretion properly. We were deprived of the sound exercise of discretion. You know, I understand and I know the court understands that there's a lot of discretion afforded trial courts in making this decision. But that presumes that the court's not making a fundamental legal error. And that occurred in this case. Because the court couldn't, the court believed it didn't matter if he severed cases or not. All of this, all, you know, 20 years of racketeering activity and murders and mayhem and what have you, would all come in on the 2001 counts. And that was a fundamental error. The court couldn't weigh the prejudice that would arise properly and he couldn't weigh the efficiencies that would occur. I believe the case should have been severed. And that's one way to review this. And, you know, I tried to suggest some of the prejudice. You know, the very first witness out of box, Mario Rodriguez, a video, you know, a huge screen video of a vicious assault. And it's described in the briefs and I don't have to go into details. But that set the stage for everything. And that shouldn't have come in on the 2001 counts. You know, a fundamental notion in relevancy is the witness has to testify from personal knowledge. Well, Mario Rodriguez was not in prison in 2001. He was not in the gang in 2001. And he had no personal knowledge of the 2001 counts. But he was there to set the stage that this is a really vicious group of people. Let me, I want to take you back for a minute to preservation of this issue. You joined in, Billy Garcia joined in Arturo Garcia's severance motion. And Arturo Garcia argued before the district court that his trial should be severed from counts six and seven. And the district court granted that motion and severed from six and seven. Now on appeal, the argument is that it should be severed from the Burns murder, which are counts, I think, four and five. I don't know that arguing and getting relief on one preserves your argument to argue to be severed from a different murder on appeal. Can you help me with that? Yes, and there were, you know, the severance was sort of a moving target. Because as people fell out, the cases were definitely shifting. We did join with Arturo. We also joined with some of the trial one defendants. We filed our own motion seeking severance of one and two. And I actually have the sites to that. And when I come back up in rebuttal, I'll provide the court with that. In district court? In district court, correct. And, you know, another question that had come up in the government's brief is whether we preserve on this ground. And I, in the reply, responded to that, that we did, in fact. And if the court looks at the February 7, 2017 argument, you can see what a real issue it was. Multiple defendants were asking whether you can, they were raising the question, can you just allege any, any by car count, you know, any murder, any assault, link it to the SNM and join them all together. And they were raising the question. The court asked, you know, the court asked the defendants, why, if you want me to ask the government questions, raise them. And one of the questions raised by Mr. Garcia's counsel was, ask them if there's any temporal limit. So the government, too, was on notice of this fundamental issue of what by car means and what the state has to prove. And that Joinder, or Joinder, that a continuing enterprise is not judged over the course of all time. It's judged at the moment of the charged murder. Well, I'm not sure I agree with you that you only look at the moment of the charged murder, because we have case law that says to prove an enterprise, you've got to prove longevity. And so to say it's the moment of the murder and nothing more doesn't seem to fit that. But I guess the question is, what's the limit and where do we turn for some articulation of a rule of what the limit is? Well, a lot of those cases, virtually all, if not all, are talking about cases that use prior acts, prior acts, to prove the longevity. And, you know, I'm not saying that it's at the second of the murder. You know, it's a reasonable period before and after. But you really have to determine whether the defendant has the requisite purpose. You have to look at that at the time they're alleged to have committed the murder. And not at what the gang may have been doing seven years later. In the case of Adrian Burns, I think 10 years later, 11 years later. That's not relevant to the purpose requirement, without which, you know, there's no arguable federal jurisdiction over this case. Are you disputing whether there was an enterprise at the time of the murder that supported count one? No, and in fact, we were willing to stipulate. And if you go through the record, we were first in line to stipulate, not only to enterprise, but to racketeering activity. And that should have counted for something. But the government, I mean, we have a lot of case law that says they don't have to accept that stipulation. No, but it changes the 403 calculus. It changes the 403 calculus. And that was important in this case. It was, you know, when you're looking at this and you're reviewing this case, I'm concerned that the court will say, well, what's one more murder? I mean, that's what Judge Browning did. Well, there is some, I mean, the evidence, there were so many graphic, horrible murders, it's hard to say under Rule 403 that one particular murder is more horrific than a different murder. Yeah, but when you put on top of that the fact that many of these murders that came out were irrelevant to the 2001 charge, that also changes the calculus. And it's not enough, especially when the government's on notice that this is a serious issue, this temporal limitation. And they say to the judge when asked about it, well, I haven't looked at the case law. I haven't looked at the case law. And they continue to assert the most expansive possible reading of relevance for enterprise. You know, given that, you know, it just seems fundamentally unfair that the court in reviewing, say, for example, the Adrian Burns, the introduction of that evidence would say, well, there were a lot of other horrible murders there were. But that's because the government created that story. I mean, they created that story when there was a stipulation offered for everything, that all of that bad conduct. And I also know... I want to ask you one more question. The standard is pretty high on severance. And actual prejudice has to be shown. This jury was pretty careful. They did not just do a blanket guilty. They distinguished among defendants and they distinguished among charges as to individual defendants. I mean, how does that play into our review standard? You know, I think it's heartbreaking that Mr. Patterson, for example, was charged. He had been out in the community for over a decade succeeding. He was brought in and there wasn't any really good evidence against him. And he was incarcerated for three years up until the time of trial. I think the jury showed that it did distinguish between defendants, but Billy Garcia was differently situated. They said, although he was not charged as a leader in the offense, they said at trial he was a leader. And all this evidence came in that leaders in SNM had to be violent. And Mr. Castle, defense counsel, objected to that and said, at least we need a limiting instruction. And the court said, no, that ship has sailed. All of this comes in as enterprise. And I see I have about a minute left. Thank you. Thank you, counsel. May it please the court. Richard Williams on behalf of the United States. This court should affirm Billy Garcia's convictions. First, with respect to preservation, the argument being made here to this court is that there is a temporal limit and that subsequent enterprise evidence should be inadmissible and should require a severance. That argument was not made in the briefing before the district court. Before the district court, Mr. Garcia argued that there were multiple conspiracies, excuse me, enterprises, that there was a separate enterprise in 2001 than that existed in the later Vicar crimes. The only time that it was mentioned is in the hearing on the 7th, which counsel alluded to. And at that time, Billy Garcia said that he thought there was a temporal limit, did not specifically cite to a case, referred to one, but said he would provide the site later, asked for the opportunity to brief it to the court. And then, subsequent to that, Mr. Garcia and Troop, who joined on this, filed a reply brief in which they did not make this argument. So I would submit that the district court was not adequately alerted to the issue, certainly not to the precise issue being made here, and that in a case in which severance indeed was heavily litigated and the court carefully went through severance grounds, split the initial trial into two, and then evaluated severance individually beyond that and rejecting a further severance, that to make a reference like that, almost a passing reference in one hearing, isn't sufficient to alert the district court that he was supposed to do the kind of analysis that's being suggested here. Let me ask you this. Is there any temporal limit to Vicar enterprise evidence? I mean, when you bring a charge under Vicar, can you go from the alpha and the omega, any activity of this gang in the history of time? So, as the court mentioned, longevity is a required element that the government must prove in order to establish the enterprise existed. In this court's Kamihili decision, it referred to an enterprise that began in the 1990s and spanned multiple generations, and that decision was in 2014. So I would suggest that the case law indicates that an enterprise can span a number of years. I think the question with respect to what the outer edges of the enterprise might be, might be fact-specific in a given case. I mean, for example, here, where the argument being pressed was that there were multiple enterprises, then the evidence was even more relevant to prove that there was a single enterprise. And while there were changes in leadership, even in the way that the S&M was led, either by individuals or by the tabla, the evidence showed that it was a single enterprise. And so the evidence was necessary in order to prove that. Is there a 403 limit to the type of evidence that can come in? I mean, that murder, the video of the murder in the shower, I mean, that is pretty powerful stuff. I mean, should there be any limit in the type of evidence that comes in on an enterprise? I think a district court could exercise its discretion in performing a 403 analysis if that argument was made to the district court. Here, I don't believe that argument was made with respect to this temporal limit argument that's being made at this time. But to follow up on what's the best evidence that links Billy Garcia to Adrian Byrne's murder? That he was a member of the S&M enterprise and that there was a single enterprise that continued through all those years. There's no specific evidence that he personally was involved in that specific Vicar crime, but that's not the question for the district court in evaluating severance. What if we determined that there wasn't sufficient evidence that Byrne's murder was a Vicar crime? What would that do to that evidence coming in as against Billy Garcia? I don't think it would change because there were other charged Vicar crimes that also were, even after the Byrne's murder in 2012, the acquitted counts were 2015, 2016, and they were also Vicar related. Again, I think it comes back to the longevity issue. And the other thing I would point out that if it was the rule that subsequent Vicar crimes were irrelevant, then every earlier in time count in an enterprise case would have this argument. And every time a count is charged in year one and there's another count that's charged in year three, if the rule is that subsequent enterprise activity is not relevant or admissible to the enterprise, then that first count would have this argument. Go ahead. If we conclude that the Byrne's murder was not related to SNM, how would you rebut the argument that that evidence was substantially prejudicial to the Billy Garcia conviction, even if there were other Vicar crimes alleged? Well, I would point out the highly discretionary nature of a severance decision and that in order to establish the cause to reverse the district court's exercise of that discretion, that an appellant must show that that discretion was abused and that there was prejudice. And here I submit that the district court was not arbitrary, whimsical and capricious. The district court was very careful in analyzing severance throughout this case. And furthermore, I would argue that, and this is true whether the court looks at it under plain error, which we submit applies, or just under the severance analysis for prejudice, a strong showing of prejudice, that Mr. Garcia can't show that. And that's because the evidence against him was indeed substantial on his count. Federico Munoz testified that Garcia said he was going to take care of Garza. Lucero testified that Angel Munoz told him that Billy was going to clean house. Lucero testified that Billy told him that Garza and Castillo had to be dealt with. Mr. Lujan testified that Mr. Garcia told him that Garza and Castillo needed to be hit and told him to choose the people to do it. Billy Cordova testified that Mr. Garcia later told him that he had Garza and Castillo hit. Mr. Archuleta testified that Billy told him that he had called the hit on Castillo. And Jake Armijo testified that Billy told him that he had had Frank Castillo hit because he had gone against them back in the main facility. In addition to this, there was the abundant evidence that the S&M, that he was a leader within the S&M and was the highest-ranking S&M member at Southern at the time that these two murders occurred. And there was testimony that something like that could not be coordinated in a single facility without the blessing of the person who ran the facility on behalf of the S&M. Furthermore, I would argue that even if there were prejudice, the district court gave limiting instructions, which it can do. And as the court pointed out, this jury showed that it was able to follow those limiting instructions. It acquitted two defendants, and it acquitted some of the counts against Mr. Jogallegos. So what instructions do you think effectively did that? The instruction to the jury that they were to consider each defendant separately and that they were to consider the evidence against each defendant separately and with respect to each count. So I think the jury's verdict in finding the two defendants not guilty shows that it was able to follow those instructions. Okay, so your argument would be as far as the temporal evidence. I mean, sort of as I meld together the arguments of your opposing counsel, is that so much of this happened after my client purportedly committed a crime, that it was unfair and suggested that he was part of this broader criminal enterprise going forward, and there was actually no evidence of that, and it unfairly prejudiced him. Your argument is that these instructions would have given the jury the guidance to not take acts that he didn't perpetrate and consider them as though he did. Correct. Sort of the transference of guilt of bad acts that he wasn't involved in that occurred, as has been pointed out, 11 years after the acts he was involved in. If a 403 argument had been made like that before the district court, which I don't believe it was, but if it were, that would not lead a jury to make a decision based on an improper emotional response, which is the prejudice that 403 is concerned about. Thank you. So if there are no other questions, I'll cede back my time. All right. Thank you, counsel. Can I ask you a question about closing real fast, and then maybe Judge Simcox will indulge you? In closing arguments for your client, was there any attempt to argue to the jury that these late, these acts that occurred much later in time shouldn't be attributed to him, and that it would be, you know, that he had nothing to do with those? There was some attempt to do that. Part of the defense theory was that it wasn't your father's SNM that did all these acts, part of my colloquial speech, and there was a lot of evidence of that. In fact, there's evidence that Billy Garcia turned himself in or put himself in protective custody in 2008, long before the Adrian Burns homicide, and you would never do that if you were still a gang member. He was on the streets in 2012, I believe, about the times of the Burns murder. So, yes, it was, there was a, the defense was I didn't order these hits, and two, this was not the same group of people. But that being said, we were willing to stipulate to enterprise and racketeering activity. Could you add another minute to the rebuttal time, please? I'll talk real fast. Limiting instructions wouldn't help here because the court believed that all of this applied to Billy Garcia. There was no limiting instruction that you don't consider anything that happened, say, after 2004 against Billy Garcia. There was no sort of limiting instruction like that. About so much evidence, you have to look at these witnesses. They could not have been more incentivized. Almost all of the ones cited by the government hated Billy Garcia. They had motive to lie. They were incentivized. They had opportunities to collaborate with their stories as reflected in the cross-examinations. Ordinarily, this may have been enough to defeat a harmless error claim or show harmless error, but not in this case, not in this case. And may I just respond to your request for... There were... I actually have a table of all the severance motions and who joined in which, and I'd be happy to provide that to the court afterwards, and I could show it to counsel, too. Make sure it squares with my chart. We all have charts. Okay. Well, it's hard to keep track. Thank you very much. Thank you, Ms. Lord. Your excuse in the case is submitted.